Brent P. Lorimer (#3731)
blorimer@wnlaw.com
Brian N. Platt (#17099)
bplatt@wnlaw.com
**WORKMAN NYDEGGER**
60 East South Temple Suite 1000
Salt Lake City, UT 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

*Attorneys for The Neck Hammock, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE NECK HAMMOCK, INC., a Delaware corporation,<br><br>     Plaintiff,<br><br>vs.<br><br>DURABLEPRO, an unknown business entity; BF LLC, and unknown business entity; and JOHN DOES 1-10, doing business as "DurablePro,"<br><br>     Defendants. | **Case No:**  2:19cv983<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT, TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, DESIGN PATENT INFRINGEMENT, AND UTILITY PATENT INFRINGEMENT**<br><br>**JURY DEMANDED** |

Plaintiff The Neck Hammock, Inc. ("Neck Hammock") complains and alleges as follows against Defendants DurablePro, BF LLC, and John Does 1-10 (collectively "Defendants").

## THE NATURE OF THE ACTION

1.     Dr. Steve Sudell Jr., DPT, ATC ("Dr. Sudell"), is a physical therapist and the founder and President of Neck Hammock.

2.     While working as a licensed physical therapist, Dr. Sudell repeatedly treated individuals suffering from compression-related neck pain. Based on his years of experience, Dr. Sudell knew that cervical traction almost always provided substantial relief for those suffering from neck pain and was routinely performing cervical traction on his patients during physical therapy sessions. Dr. Sudell wanted his patients to be able to continue experiencing the therapeutic benefits of cervical traction in between their physical therapy sessions and even after their routine physical therapy sessions had ended, but after looking through the array of at-home cervical traction devices available on the market, Dr. Sudell could not with a good conscience recommend any at-home cervical traction device to his patients. All of the products available at that time were either too expensive and too bulky or were cheaply made and ineffective.

3.     Instead of watching his clients suffer for lack of an adequate replacement for professionally-performed cervical traction, Dr. Sudell invested his time and energy into inventing and developing an economical alternative that was—above all—effective to provide therapeutic cervical traction but that was also comfortable and economically priced. Dr. Sudell coined his inventive portable cervical traction device the Neck Hammock®.

4.     The ingenious design of the Neck Hammock® (*e.g.,* as shown in Figure 1 below) allows individuals suffering from a variety of conditions, including neck arthritis, a

2

herniated/bulging disc in the neck, pinched nerves, neck strains and cervical muscle spasms to experience therapeutic relief through cervical traction that would normally be administered in the office of a physical therapist.



**Figure 1**

5. As illustrated in Figure 2 below, the Neck Hammock® includes shock-absorbing cords attached to opposite ends of a sling that cradles the user's head. The shock-absorbing cords are anchorable to an environmental object, such as a door or railing, and together with the force of gravity, the tension of the cords provides gentle, therapeutic cervical traction to the user.



**Figure 2**

6. Used in this way, the Neck Hammock® gradually stretches muscles and ligaments around the vertebrae of the spine, expanding space between vertebrae. In the end, pinched nerves

are released, herniated and bulging discs relax as pressure is relieved, and blood circulation improves to the structures of the cervical spine, which may help oxygenate muscles, nerves, tendons and ligaments.

7. These, and other health benefits that are enabled by the use of the Neck Hammock® result in this device being categorized as a "medical device" according to the Federal Drug Administration (FDA). Such devices require FDA approval for unencumbered commercialization, and Dr. Sudell abided by the applicable laws and regulations to receive FDA approval of the Neck Hammock® as a medical device.

8. On October 24, 2017, Neck Hammock launched a campaign on kickstarter.com, which was fully funded within three hours. By December 1, 2017, Neck Hammock successfully raised $901,058 in its Kickstarter campaign—more than 4,500% over its original goal of $20,000. Neck Hammock had a sister crowdfunding campaign for the Neck Hammock® that they launched on indiegogo.com. This campaign was also extremely successful and fully funded far in advance— for a total $1,642,934 in crowd-sourced, pre-paid orders.

9. The revolutionary Neck Hammock® was not only widely received by consumers on crowdfunding websites but in the media as well. The Neck Hammock® was featured on the Dr. Oz Show as one of the best health finds of 2018. The Neck Hammock® received a spotlight article in Forbes and was widely covered by myriad other news and personal health sites.

10. However, eager consumers and media outlets were not the only parties interested in the market success of the Neck Hammock®. Unfortunately, after the crowdfunding campaigns launched—**but before the successful campaigns had even ended**—infringers began copying Neck Hammock's design and selling cheaply made knock-off products. The Neck Hammock took great

care in sourcing the materials and selecting trusted manufacturers that would ensure the production of a consistently safe and reliable product. The shameless copycats that flooded the market in an attempt to ride the coattails of Neck Hammock's success were not so concerned about functional or safe products and often resulted in mechanical failures and consumer injury when the products were used.

11.     Neck Hammock was forced to expedite its intellectual property protections to combat the widespread copying of the Neck Hammock® device, branding, and marketing materials. Neck Hammock's creative achievement resulted in broad intellectual property protection for the Neck Hammock® and associated brand, including utility and design patents, trademarks, and copyright protections. Nevertheless, Neck Hammock's product innovations have been the subject of widespread copying. Unscrupulous competitors have attempted to capitalize on Neck Hammock's success by co-opting Neck Hammock's copyrighted works and patented designs and by misappropriating Neck Hammock's trademark, including its flagship "Neck Hammock®" mark. To date, over 8,000 unauthorized product listings infringing one or more of Neck Hammock's intellectual property rights have been removed, but the endless whack-a-mole continues despite Neck Hammock's efforts to police the marketplace.

12.     Defendants are some of the principal offenders selling knock-off Neck Hammock® devices, infringing Neck Hammock's patented designs, misappropriating its trademarks, and in some instances, even blatantly ripping off Neck Hammock's registered copyrights. Defendants sell their infringing products on eCommerce platforms including https://buyneckomfort.com.

13.     With this action, Neck Hammock seeks to put a stop to Defendants' illegal conduct and to obtain compensation for infringement that has occurred thus far.

**THE PARTIES**

14.     Plaintiff The Neck Hammock, Inc. is a Delaware corporation with a principal place of business at 830 Hill Street, Apt. E, Santa Monica, California. Neck Hammock does business, has customers, and has suffered injury in the District of Utah.

15.     Defendant DurablePro is an unknown business entity whose true name and address of residence are unknown.  DurablePro is purposefully obscuring the location of its principal place of business.   The website DurablePro.com lists an inaccurate and fake physical address for Defendant DurablePro, which is the address of the Beverly Center Shopping Mall in Los Angeles:



Products ordered from DurablePro.com were shipped from China.

16.     Defendant BF LLC ("BF") is a business entity affiliated with Defendant DurablePro, whose registration and address of residence are unknown.  Defendants BF and DurablePro accept payments for counterfeit and infringing products at a PayPal account associated with the email address elh@gmail.com.

17.     Defendants John Does 1-10 are individuals or entities whose true names and addresses of residence are unknown.  Working with DurablePro and BF, Defendant John Does sell infringing, knock-off Neck Hammock® products on various eCommerce platforms under the name "DurablePro."  At the time of filing, the true names and addresses of Defendants John Does 1-10 could not be discovered with reasonable effort. When the true names and addresses are

discovered, and upon leave of this Court, they will be added into the Complaint by amendment.

## JURISDICTION

18.     This Court has subject matter jurisdiction under 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any Act of Congress relating to patents or trademarks); 28 U.S.C. § 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark laws); and 28 U.S.C. § 1367 (supplemental jurisdiction).

19.     This Court has personal jurisdiction over Defendants DurablePro, BF, and John Does 1-10 because Defendants have committed and continue to commit acts of infringement in violation of 35 U.S.C. § 271 and 15 U.S.C. §§ 1114 and 1125 in this District, and because each Defendant places infringing products into the stream of commerce, with the knowledge or understanding that such products are sold in the State of Utah and in this District.  In addition, the acts by Defendants cause substantial injury to Neck Hammock in this District.  On information and belief, Defendants derive substantial revenue from their sale of infringing products within this District, expect their actions to have consequences within this District, and derive substantial revenue from interstate and international commerce directed both to and from this District.

## VENUE

20.     Defendants are individuals or entities subject to personal jurisdiction in this District.  Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim took place in this District:  Defendants transact business within this district and Neck Hammock suffered harm in this District.  Venue is proper in this district under 28 U.S.C. § 1391(b)(3) because certain Defendants are individuals whose names and

addresses of residence are unknown that are otherwise subject to personal jurisdiction in this District.  Alternatively, upon information and belief, venue is proper in this district because Defendants are foreign persons or corporations otherwise subject to personal jurisdiction in this District.

## **BACKGROUND**

21.     Neck Hammock is a world-leading manufacturer of innovative portable devices designed to offer pain relief, including the cervical traction device designed to offer neck pain relief widely known as the Neck Hammock® cervical traction device. Neck Hammock's business is dedicated to the development of portable pain relief devices. In its short time providing affordable pain relief devices, Neck Hammock has filled an important niche in the physical therapy market by offering innovative home-solutions to physical health problems.

22.     Cervical traction generally refers to methods of applying force to relieve neck pain for individuals suffering from various ailments, including neck arthritis, herniated/bulging discs in the neck, pinched nerves, neck strains, or cervical muscle spasms. Cervical traction entails gently urging the head away from the neck, and gradually stretching muscles and ligaments around the vertebrae of the spine and expanding space between vertebrae. Cervical traction may release pinched nerves, relax herniated and bulging discs by relieving pressure, improve blood circulation to the structures for the cervical spine, and help oxygenate muscles, nerves, tendons and ligaments in the head and neck area.

23.     Traditionally, individuals could only receive cervical traction at a medical facility or office. Such visits were often time-consuming, inconvenient, and costly. Moreover, due to the cost, patients could generally only afford such visits periodically.

24.     Modern at-home cervical traction devices are available in the market. However, many of these devices are complex, cumbersome, bulky, expensive and potentially unsafe. For example, many home cervical traction devices include headgear which includes straps around the user's forehead, head, and chin. Such headgear is cumbersome, constricting, and inconvenient; in addition, such products exert stress at the jaw that may lead to or exacerbate temporomandibular disorders. Moreover, many such devices require weights and pulleys to exert tension, which are at the very least bulky, cumbersome, and inconvenient but which are also potentially dangerous. Other similar devices include clamps and brackets for attachment to doors and furniture, which can mar surface finishes and interfere with use of the door or furniture.

25.     While working as a physical therapist, Dr. Sudell worked with and helped patients experiencing, *inter alia*, neck pain. Based on his work, Dr. Sudell recognized the need for an easy to use, compact, non-marring, and effective traction device that minimized discomfort and avoided potentially injurious stresses, while remaining an economically feasible option for users. Consequently, Dr. Sudell invented the widely recognized device known as the Neck Hammock® cervical traction device (shown below in Figure 3) and founded the corporation known as "The Neck Hammock."

//

//

//

//

//

//



**Figure 3**

26. Neck Hammock has protected its innovative designs through a broad range of intellectual property rights. Among those rights are the patents listed below (the "Neck Hammock Patents"):

| Patent Number | Title |
| --- | --- |
| 10,307,284 ("'284 Patent") | Portable Traction Device with Sling |
| D824,035 ("'D035 Patent") | Portable Traction Device |
| D845,492 ("'D492 Patent") | Portable Traction Device |
| D845,494 ("'D494 Patent") | Portable Traction Device |

27. Neck Hammock obtained a U.S. copyright registration (Registration Number: VA 2-090-260) ("'260 Copyright") to protect the following pictorial and graphic works (the "Neck

Hammock Copyright"):























28.     Neck Hammock obtained U.S. trademarks related to physical therapy and cervical traction, including the registered trademarks listed below (the "Neck Hammock Trademarks"):

| Registration Number | Trademark |
| --- | --- |
| 5,626,795 ("'795 Trademark") | Neck Hammock |
| 5,439,768 ("'768 Trademark") | The Neck Hammock |




29.    Rather than innovate and develop their own technology and products, Defendants copied Neck Hammock's patented technology and designs, and market those infringing designs as "Neck Hammocks" (the "Accused Products") using the Neck Hammock Trademarks.  Defendants sell or advertise the Accused Products online at URLs including   https://durablepro.com/ and https://durablepro.com/products/the-neck-hammock, as shown below.



**Figure 4**

## FIRST CAUSE OF ACTION
### Trademark Infringement
### 15 U.S.C. § 1114

30.    Neck Hammock incorporates and realleges each and every allegation in the preceding paragraphs, as if fully set forth herein.

31.    Neck Hammock owns the Neck Hammock Trademarks.

32.    Neck Hammock registered the Neck Hammock Trademarks with the United States Patent and Trademark Office. A true and correct copy of the '795 Trademark is attached as Exhibit A. A true and correct copy of the '768 Trademark is attached as Exhibit B. A true and correct copy of the '079 Trademark is attached as Exhibit C.

33.    The Neck Hammock Trademarks are valid and subsisting trademarks in full force and effect.

34.    Defendants infringe the Neck Hammock Trademarks by advertising products using the Neck Hammock Trademarks in commerce for products offered for sale at Defendants' https://durablepro.com/ website, as shown in Figure 4.

35.    Defendants' unauthorized use of the Neck Hammock Trademarks is likely to cause confusion, to cause mistake, or to deceive the consumer as to the affiliation, connection, or association of Defendant's knock-off products with Neck Hammock, or as to the origin, or approval by Neck Hammock of Defendants' goods, services, or commercial activities, in violation of 15 U.S.C. § 1114(a).

36.    Defendants' unauthorized use of the Neck Hammock Trademarks enables Defendants to benefit unfairly from Neck Hammock's reputation and success, thereby giving Defendants infringing product sales and commercial value they would not have otherwise

received.

37.     Defendants' unauthorized use of the Neck Hammock Trademarks has been and continues to be intentional, willful, and without regard to Neck Hammock's rights.

38.     Defendants have gained profits by virtue of their infringement of the Neck Hammock Trademarks.

39.     Neck Hammock is suffering irreparable harm from Defendants' infringement of the Neck Hammock Trademarks insofar as Neck Hammock's good will is being eroded by Defendants' continued infringement. Neck Hammock has no adequate remedy at law to compensate it for the loss of business reputation, customers, market position, confusion of potential customers, and goodwill flowing from Defendants' infringing activities. Pursuant to 15 U.S.C. § 1116, Neck Hammock is entitled to an injunction against Defendants' continuing infringement of the Neck Hammock Trademarks.

40.     Because Defendants' actions have been committed with intent to damage Neck Hammock and to confuse and deceive the public, Neck Hammock is entitled to treble its actual damages or Defendants' profits, whichever is greater, and to an award of costs and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and 1117(b).

<div align="center">

**SECOND CAUSE OF ACTION**
**Unfair Competition**
**15 U.S.C. § 1125(a)**

</div>

41.     Neck Hammock incorporates and realleges each and every allegation in the preceding paragraphs, as if fully set forth herein.

42.     Neck Hammock owns the Neck Hammock Trademarks.

43.     Neck Hammock registered the Neck Hammock Trademarks with the United States

Patent and Trademark Office.

44. The Neck Hammock Trademarks are valid and subsisting trademarks in full force and effect.

45. Defendants infringe the Neck Hammock Trademarks by advertising products using the Neck Hammock Trademarks in commerce for products for sale at Defendants' web listings.

46. Defendants' unauthorized use of the Neck Hammock Trademarks is likely to cause confusion, to cause mistake, or to deceive the consumer as to the affiliation, connection, or association of Defendant's knock-off products with Neck Hammock, or as to the origin, or approval by Neck Hammock of Defendants' goods, services, or commercial activities, in violation of 15 U.S.C. § 1125(a).

47. Defendants' unauthorized use of the Neck Hammock Trademarks enables Defendants to benefit unfairly from Neck Hammock's reputation and success, thereby giving Defendants infringing product sales and commercial value they would not have otherwise received, in violation of 15 U.S.C. § 1125(a).

48. Defendants' unauthorized use of the Neck Hammock Trademarks as described herein has been and continues to be intentional, willful, and without regard to Neck Hammock's rights.

49. Neck Hammock is suffering irreparable harm from Defendants' infringement of the Neck Hammock Trademarks insofar as Neck Hammock's good will is being eroded by Defendants' continued infringement. Neck Hammock has no adequate remedy at law to compensate it for the loss of business reputation, customers, market position, confusion of potential customers, and goodwill flowing from Defendants' infringing activities. Pursuant to 15

U.S.C. § 1116, Neck Hammock is entitled to an injunction against Defendants' continuing infringement of the Neck Hammock Trademarks.

50.     Because Defendants' actions have been committed with intent to damage Neck Hammock and to confuse and deceive the public, Neck Hammock is entitled to treble its actual damages or Defendants' profits, whichever is greater, and to an award of costs and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and 1117(b).

<u>**THIRD CLAIM FOR RELIEF**</u>
**Infringement of the '260 Copyright**
**17 U.S.C. § 106** *et seq*

51.     Neck Hammock incorporates and realleges paragraphs 1 through 54 of the Complaint, as if fully set forth herein.

52.     On January 7, 2018, United States Copyright Registration No. VA 2-090-260 was duly and legally issued by the United States Copyright Office. A true and correct copy of the '260 Copyright is attached as Exhibit D.

53.     Neck Hammock is the owner of the '260 Copyright.

54.     Defendants have made and used unauthorized reproductions of Neck Hammock's original works, which are the subject of the '260 Copyright, as outlined in the chart below:

//

//

//

//

//

//

| U.S. Copyright No. VA 2-090-260 | DurablePro Website |
|---|---|
|  | <br><br>*Note: DurablePro has "flipped" the image about its horizontal axis, cropped the image, and removed the Neck Hammock logo.* |
|  | <br><br>*Note: DurablePro has removed the Neck Hammock logo from this stolen image.* |

| U.S. Copyright No. VA 2-090-260 | DurablePro Website |
|---|---|
|  |  |
| | *Note: DurablePro has cropped this stolen image and used it in a fake review.  It did not bother to remove the Neck Hammock logo.* |
|  |  |
| | *Note: DurablePro has cropped the image and removed the Neck Hammock logo.* |

| U.S. Copyright No. VA 2-090-260 | DurablePro Product Insert |
|---|---|



55.     Defendants have produced, reproduced, and/or prepared reproductions of Neck Hammock's protected works without Neck Hammock's consent. Defendants' acts violate Neck Hammock's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 501, including its exclusive rights to produce, reproduce, and distribute copies of its work, to create derivative works, and to publicly display its work.

56.     Defendants' infringement has been undertaken willfully with the intent to financially gain from Neck Hammock's copyrighted work. Accordingly, Defendants have infringed Neck Hammock's copyrighted work.

57.     Because of Defendants' infringing acts, Neck Hammock is entitled to its actual and/or statutory damages, and Defendants' profits attributable to the infringement in an amount to be proved at trial, together with all other relief allowed under the Copyright Act.

58.     Because of Defendants' willful infringement, Neck Hammock is entitled to increased damages pursuant to 17 U.S.C. § 504(c)(2).

59.     Defendants' infringement has caused and continues to cause irreparable harm to Neck Hammock, for which it has no adequate remedy at law. Unless this Court restrains Defendants from infringing Neck Hammock's protected work, the harm will continue to occur in the future. Accordingly, Neck Hammock is entitled to a preliminary and permanent injunction.

### FOURTH CAUSE OF ACTION
**Infringement of the '284 Patent**
**35 U.S.C. § 271**

60.     Neck Hammock incorporates and realleges each and every allegation in the preceding paragraphs, as if fully set forth herein.

61.     On June 14, 2018, United States Patent No. 10,307,284 was duly and legally issued

by the United States Patent and Trademark Office for an invention entitled "Portable Traction Device with Sling." A true and correct copy of the '284 Patent is attached as Exhibit E.

62.     Neck Hammock is the owner of the '284 Patent.

63.     Defendants have infringed one or more claims of the '284 Patent under 35 U.S.C. § 271(a) by, among other things, offering for sale, selling, importing, and/or distributing the Accused Products in the United States.

64.     The Accused Products include "a sling assembly" as required by claim 1 of the '284 Patent, the "sling comprising flexible material and having a first side, a second side opposite the first side, a superior edge, and an inferior edge," as required by claim 1 of the '284 Patent.



**Accused Product**
(photo of Accused Product – 12/9/2019)

65.     The Accused Products include "the sling being elongated and sized to cradle and engage an occipital bone portion of a user's head via at least a frictional portion of the sling disposed between the superior edge and the inferior edge of the sling when the first side extends to a first side of the user's head and the second side extends to a second side of the user's head," as required by claim 1 of the '284 Patent.



Elongated and sized to cradle and engage an occipital bone.

Frictional portion

**Accused Product**
(photo of Accused Product – 12/9/2019)

66.     The Accused Products include "a base cushion attached to the sling between the superior edge and the inferior edge and approximately centered between the first and second sides of the sling," as required by claim 1 of the '284 Patent.



**Accused Product**
(photo of Accused Product – 12/9/2019)

67.     The Accused Products include "a first side cushion disposed between the base cushion and the and the first side of the sling," and "a second side cushion disposed between the base cushion and the second side of the sling," as required by claim 1 of the '284 Patent.



**Accused Product**
(photo of Accused Product – 12/9/2019)

68.     The Accused Products include "a pair of side attachments comprising a first side attachment extending from the first side of the sling and a second side attachment extending from the second side of the sling," as required by claim 1 of the '284 Patent.



**Accused Product**
(photo of Accused Product – 12/9/2019)

69.     The Accused Products include "flexible elastic tethers operable to selectively attach to the pair of side attachments via first ends of the flexible elastic tethers," as required by claim 1 of the '284 Patent.

//

//

//

//



**Accused Product**
(photo of Accused Product – 12/9/2019)

70.     The Accused Products include "an anchor operable to selectively attach to the sling and to an anchoring object, wherein the anchor comprises: an anchor tab; an anchor connector operable to selectively attach to second ends of the flexible elastic tethers; and an anchor strap disposed between and connecting the anchor tab and the anchor connector." as required by claim 1 of the '284 Patent.

//

//

//

//

//



**Accused Product**
(photo of Accused Product – 12/9/2019)

71.     Defendants have infringed at least claim 1 of the '284 Patent and one or more additional claims of the '284 Patent under 35 U.S.C. § 271 by offering for sale, selling, importing, and/or distributing the Accused Products in the United States.

72.     Defendants have willfully infringed the '284 Patent with knowledge of the '284 Patent or were willfully blind to the patent and the risk of infringement.

73.     Defendants' infringement of the '284 Patent has caused and continues to cause damages to Neck Hammock.

74.     As a result of the Defendants' infringement, Neck Hammock has been damaged and is entitled to damages, costs, and attorneys' fees, in an amount to be proven at trial.

75.     Defendants' infringement of the '284 Patent has caused and continues to cause irreparable harm to Neck Hammock.

76.     As a result of the Defendants' past and ongoing infringement, Neck Hammock is entitled to injunctive relief.

## FIFTH CAUSE OF ACTION
### Infringement of the 'D035 Patent
### 35 U.S.C. § 271

77.     Neck Hammock incorporates and realleges each and every allegation in the preceding paragraphs, as if fully set forth herein.

78.     On July 24, 2018, United States Design Patent No. D824,035 was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the 'D035 Patent is attached as Exhibit F.

79.     Neck Hammock is the owner of the 'D035 Patent.

80.     Defendants have infringed and continue to infringe the 'D035 Patent by using, selling and/or offering to sell in the United States, and/or importing into the United States one or more of the Accused Products identified in this Complaint, such that an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design, as detailed below.

| U.S. Patent No. D842,035 | Accused Product |
|---|---|
|  | |
| | photo of Accused Product – 12/9/2019 |



FIG. 4



photo of Accused Product – 12/9/2019

81.     Defendants have willfully infringed the 'D035 Patent with knowledge of the 'D035 Patent or were willfully blind to the patent and the risk of infringement.

82.     Defendants' infringement of the 'D035 Patent has caused and continues to cause damages to Neck Hammock.

83.     As a result of the Defendants' infringement, Neck Hammock has been damaged and is entitled to damages, costs, and attorneys' fees, in an amount to be proven at trial.

84.     Defendants' infringement of the 'D035 Patent has caused and continues to cause irreparable harm to Neck Hammock.

85.     As a result of the Defendants' past and ongoing infringement, Neck Hammock is entitled to injunctive relief.

**FIFTH CAUSE OF ACTION**
**Infringement of the 'D492 Patent**
**35 U.S.C. § 271**

86.     Neck Hammock incorporates and realleges each and every allegation in the preceding paragraphs, as if fully set forth herein.

87.     On April 9, 2019, United States Design Patent No. D824,492 was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the 'D492 Patent is attached as Exhibit G.

88.     Neck Hammock is the owner of the 'D492 Patent.

89.     Defendants have infringed and continue to infringe the 'D492 Patent by using, selling and/or offering to sell in the United States, and/or importing into the United States one or more of the Accused Products identified in this Complaint, such that an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design, as detailed below.

| U.S. Patent No. D845,492 | Accused Product |
|---|---|
|  | |
| | photo of Accused Product – 12/9/2019 |
| | photo of Accused Product – 12/9/2019 |

90.     Defendants have willfully infringed the 'D492 Patent with knowledge of the 'D492 Patent or were willfully blind to the patent and the risk of infringement.

91.     Defendants' infringement of the 'D492 Patent has caused and continues to cause damages to Neck Hammock.

92.     As a result of the Defendants' infringement, Neck Hammock has been damaged and is entitled to damages, costs, and attorneys' fees, in an amount to be proven at trial.

93.     Defendants' infringement of the 'D492 Patent has caused and continues to cause irreparable harm to Neck Hammock.

94.     As a result of the Defendants' past and ongoing infringement, Neck Hammock is entitled to injunctive relief.

### SIXTH CAUSE OF ACTION
**Infringement of the 'D494 Patent**
**35 U.S.C. § 271**

95.     Neck Hammock incorporates and realleges each and every allegation in the preceding paragraphs, as if fully set forth herein.

96.     On April 9, 2019, United States Design Patent No. D824,494 was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the 'D494 Patent is attached as Exhibit H.

97.     Neck Hammock is the owner of the 'D494 Patent.

98.     Defendants have infringed and continue to infringe the 'D494 Patent by using, selling and/or offering to sell in the United States, and/or importing into the United States one or more of the Accused Products identified in this Complaint, such that an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design, as detailed below.

//

//

//

| U.S. Patent No. D845,494 | Accused Product |
| --- | --- |





photo of Accused Product – 12/9/2019





photo of Accused Product – 12/9/2019

99. Defendants have willfully infringed the 'D494 Patent with knowledge of the 'D494 Patent or were willfully blind to the patent and the risk of infringement.

100. Defendants' infringement of the 'D494 Patent has caused and continues to cause damages to Neck Hammock.

101. As a result of the Defendants' infringement, Neck Hammock has been damaged and is entitled to damages, costs, and attorneys' fees, in an amount to be proven at trial.

102. Defendants' infringement of the 'D494 Patent has caused and continues to cause irreparable harm to Neck Hammock.

103.     As a result of the Defendants' past and ongoing infringement, Neck Hammock is entitled to injunctive relief.

## PRAYER FOR RELIEF

Wherefore, Neck Hammock respectfully prays that the Court enter judgment in its favor and award the following relief against Defendants:

A.     A judgment in favor of Neck Hammock that Defendants infringed the registered Neck Hammock Trademarks;

B.     A judgment in favor of Neck Hammock that Defendants willfully infringed the Neck Hammock Trademarks;

C.     A judgment in favor of Neck Hammock that Defendants engaged in unfair competition and unfair trade practices in violation of 15 U.S.C. § 1125.

D.     An order and judgment preliminarily and permanently enjoining Defendants and its officers, directors, employees, agents, licensees, representatives, affiliates, related companies, servants, successors and assigns, and any and all persons acting in privity or in concert with any of them, from infringing the registered Neck Hammock Trademarks; from passing off Defendants' products as associated with or sponsored or affiliated with Neck Hammock; for the destruction of any infringing articles; and for reasonable funds for corrective advertising to correct Defendants' misleading association with Neck Hammock;

E.     A judgment awarding Neck Hammock damages in an amount to be determined at trial, an accounting of Defendants' profits, and costs of the action pursuant to 15 U.S.C. § 1117.

F.     Any other remedy to which Neck Hammock may be entitled, including all remedies provided for in 15 U.S.C. § 1117 *et seq*.

G.      A judgment in favor of Neck Hammock that Defendants infringed one or more claims of each of the Neck Hammock Patents;

H.      A judgment in favor of Neck Hammock that Defendants willfully infringed each of the Neck Hammock Patents;

I.      An order and judgment preliminarily and permanently enjoining Defendants and its officers, directors, employees, agents, licensees, representatives, affiliates, related companies, servants, successors and assigns, and any and all persons acting in privity or in concert with any of them, from further acts of infringement of the Neck Hammock Patents;

J.      A judgment awarding Neck Hammock damages for infringement of the Neck Hammock Patents pursuant to 35 U.S.C. § 284, together with prejudgment interest;

K.      A judgment trebling damages pursuant to 15 U.S.C. § 1117 and 35 U.S.C. § 284;

L.      A judgment that this is an exceptional case, pursuant to 15 U.S.C. § 1117 and 35 U.S.C. § 285, together with an award of Plaintiff's reasonable attorneys' fees.

M.      A judgment in favor of Neck Hammock that Defendants have infringed the registered Neck Hammock Copyright;

N.      A judgment in favor of Neck Hammock that Defendants infringement of the registered Neck Hammock Copyright has been willful;

O.      A judgment in favor of Neck Hammock that Neck Hammock is entitled to its actual and/or statutory damages, and Defendants profits attributable to the infringement of the Neck Hammock Copyright, in an amount to be proved at trial;

P.      A judgment in favor of Neck Hammock that Neck Hammock is entitled to increased damages pursuant to 17 U.S.C. § 504(c)(2) due to Defendants willful infringement;

Q.     An order and judgment enjoining Defendants and their officers, directors, employees, agents, licensees, representatives, affiliates, related companies, servants, successors and assigns, and any and all persons acting in privity or in concert with any of them, from infringing the registered Neck Hammock Copyright;

R.     Any other relief the Court deems just and proper under all the circumstances.

## Demand for Trial by Jury

Neck Hammock demands a jury trial on all matters triable to a jury.

DATED this 16th day of December, 2019.

<div style="margin-left:40%">

Respectfully submitted,

By: /s/ Brian N. Platt

BRENT P. LORIMER (#3731)
blorimer@wnlaw.com
BRIAN N. PLATT (#17099)
bplatt@wnlaw.com
WORKMAN | NYDEGGER
60 East South Temple, Suite 1000
Salt Lake City, Utah 84111
Telephone: (801) 533-9800

*Counsel for Plaintiff The Neck Hammock, Inc.*

</div>